1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10
11

ROMAN PEREZ NUNEZ,

Case No. 1:22-cv-01260-ADA-SAB

12

Plaintiff,

13

v.

14

COMMISSIONER OF SOCIAL
SECURITY,

15

Defendant.

16

FINDINGS AND RECOMMENDATIONS
RECOMMENDING DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT,
GRANTING DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT,
AND DENYING PLAINTIFF'S SOCIAL
SECURITY APPEAL

(ECF Nos. 13, 14, 15, 16)

17

**OBJECTIONS DUE IN 21 DAYS**

18
19

**I.**

20

**INTRODUCTION**

21

Roman Perez Nunez ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, seeks judicial

22

review of a final decision of the Commissioner of Social Security ("Commissioner" or

23

"Defendant") denying disability benefits pursuant to the Social Security Act.  The matter is

24

currently before the Court on the parties' cross-motions for summary judgment, which were

25

submitted, without oral argument.  For the reasons set forth below, the Court recommends

26

Plaintiff's motion for summary judgment be denied, Defendant's cross-motion for summary

27

judgment be granted, and Plaintiff's social security appeal be denied.

28

/ / /

1

## II.

## BACKGROUND

### A.     Procedural History

Plaintiff previously received supplemental security income benefits based on disability as a child.  (See AR 18, 94.)  Pursuant to applicable social security rules, eligibility for these benefits was redetermined when Plaintiff attained age 18, and on July 2, 2019, Plaintiff was deemed no longer disabled as of June 15, 2019.  (AR 96–105, 106.)  After that determination was upheld upon reconsideration, Plaintiff filed a written request for a hearing before an administrative law judge, and received a hearing before Shiva Bozarth (the "ALJ").  (AR 159–60.)

The ALJ held an initial hearing on January 13, 2021, at which Plaintiff and his mother, Ms. Medina, presented testimony.  (AR 45-59.)  The hearing was postponed so that Plaintiff could try to obtain legal representation.  (AR 56-58.)  The ALJ concluded by asking "[d]o you understand that if you don't have a representative when your hearing is rescheduled, we're going to go forward that day?", and Plaintiff stated he understood.  (AR 58.)  A second hearing was held on April 28, 2021, at which Plaintiff, his mother, Ms. Medina, and a vocational expert ("VE"), presented testimony.  (AR 62-93.)  Plaintiff was not represented by legal counsel.  (Id.)

On September 29, 2021, the ALJ issued a decision that found Plaintiff not disabled.  (AR 18–30.)  Plaintiff requested review of the decision, and on September 6, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 1-6, 225-227.)

On October 4, 2022, Plaintiff filed this action for judicial review.  (ECF No. 1.)  On November 16, 2022, Defendant filed the administrative record ("AR") in this action.  (ECF No. 12.)  On January 30, 2023, Plaintiff filed what the Court construes as the opening brief in support of summary judgment.  (Pl.'s Opening Br. ("Br."), ECF No. 13.)[1]  On March 15, 2023, Defendant filed an opposition brief and motion for cross-summary judgment.  (Def.'s Opp'n

---

[1]  On February 27, 2023, Plaintiff also filed a request for final judgment.  (ECF No. 14.)  It is not clear why this was filed, however, as Defendant notes in their briefing, it may have been filed under Plaintiff's mistaken assumption that the opposition was filed late.  Defendant's opposition was timely filed pursuant to the scheduling order issued in this action.

("Opp'n"), ECF No. 15.)  On March 22, 2023, Plaintiff filed what the Court construes as a reply brief and opposition to Defendant's cross-motion.  (Pl.'s Reply Br. ("Reply"), ECF No. 16.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, September 29, 2021:

1. The claimant attained age 18 on January 12, 2019, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18.  The claimant was notified that he was found no longer disabled as of June 15, 2019, based on a redetermination of disability under the rules for adults who file new applications.

2. Since June 15, 2019, the claimant has had the following severe impairment: Borderline Intellectual Functioning (20 CFR 416.920(c)).

3. Since June 15, 2019, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that since June 15, 2019, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, repetitive tasks making only routine work-related decisions.  He could have no more than occasional contact with coworkers.  He cannot have work-related contact with the general public.  He is unable to work at a production rate pace.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on January 13, 2001 and is a younger individual age 18-49 (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past

relevant work (20 CFR 416.968).

9. Since June 15, 2019, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant's disability ended on June 15, 2019, and the claimant has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

(AR 20-30.)

### III.

### LEGAL STANDARD

#### A.      The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt.

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[4]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC,

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1   age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d

2   1111, 1114 (9th Cir. 2006).   To do this, the ALJ can use either the Medical Vocational

3   Guidelines ("grids"), or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2;

4   Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).

5   "Throughout the five-step evaluation, the ALJ is responsible for determining credibility,

6   resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at

7   1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

8          **B.     Standard of Review**

9          Congress has provided that an individual may obtain judicial review of any final decision

10  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).

11  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised

12  by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir.

13  2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court

14  must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42

15  U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is

16  relevant evidence which, considering the record as a whole, a reasonable person might accept as

17  adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir.

18  2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995));

19  see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence

20  standard to the deferential clearly-erroneous standard).   "[T]he threshold for such evidentiary

21  sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means

22  more than a scintilla, but less than a preponderance; it is an extremely deferential standard."

23  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal

24  quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

25  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is

26  harmless.  Stout, 454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not

27  harmless "normally falls upon the party attacking the agency's determination."  Shinseki v.

28  Sanders, 556 U.S. 396, 409 (2009).

1    Finally, "a reviewing court must consider the entire record as a whole and may not affirm

2  simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

3  1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

4  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may

5  review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

6  Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is

7  not this Court's function to second guess the ALJ's conclusions and substitute the Court's

8  judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational

9  interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting

10  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

11                                              **IV.**

12                              **DISCUSSION AND ANALYSIS**

13    Plaintiff proceeds in this action *pro se*.  The Court shall first summarize the Plaintiff's

14  opening brief and the arguments presented therein.

15    **A.    Plaintiff's Arguments Presented in Briefing**

16    Plaintiff requests that his disability benefits be reinstated and back payments be issued, for

17  violation under the Social Security Act § 1148, Section 301 Ticket to Work Program, and 519 Ticket

18  to Work Self-Sufficient Program.[5]  (Br. 1.)  Plaintiff claims the Defendant violated his right to

19  benefits under the Ticket to Work program, while currently working with the Department of

20  Rehabilitation ("DOR"),[6] which he was utilizing in order to gain employment skills to get off and

21

22  [5] "[T]he Ticket to Work program, [] assists disabled individuals 'in obtaining the services necessary to find, enter
and retain employment' to reduce their dependency upon disability benefits.  Argue v. Berryhill, No. 17-CV-1677

23  DMS (JMA), 2018 WL 2113091, at *1 (S.D. Cal. May 7, 2018) (citations omitted); see 20 C.F.R. § 411.105 ("The
purpose of the Ticket to Work program is to expand the universe of service providers available to individuals who
are entitled to Social Security benefits based on disability or eligible for Supplemental Security Income (SSI)

24  benefits based on disability or blindness in obtaining the services necessary to find, enter and retain employment.
Expanded employment opportunities for these individuals also will increase the likelihood that these individuals will

25  reduce their dependency on Social Security and SSI cash benefits.").  "The program consists of a 'trial work period,'
which allows beneficiaries to perform work activity for up to nine months total and 'still be considered disabled,' i.e.

26  not lose their eligibility for benefits or have their benefit payments suspended.  Argue, 2018 WL 2113091, at *1
(quoting 20 C.F.R. § 404.1592(a)).

27  [6]  Plaintiff refers to a California state agency.  "The California Department of Rehabilitation (DOR) works in
partnership with consumers and other stakeholders to provide services and advocacy resulting in employment,

28  independent living, and equality for individuals with disabilities.  DOR administers the largest vocational

1  remain off of disability, and not rely on any government benefits.  (Br. 1-2.)

2      Plaintiff claims he does not fall under the definition of "Self-Sufficient," which he proffers is

3  defined in the SSA rules, as "when one[']s monthly earnings is more in a 9 month consiste[nt] period

4  of time than that of the benefits received from an individual's SSI or SSDI benefits."  (Br. 2.)

5  Plaintiff argues the Defendant denied disability benefits by alleging he was no longer disabled, and

6  was self-sufficient in his daily activities.  (Br. 2.)  Plaintiff proffers the local Social Security office

7  had in fact started to conduct his medical review while he was working with the DOR on July 2,

8  2019, and that the Plaintiff was in a workability program for students with disabilities during high

9  school, and does not qualify as self-sufficient under the Social Security Rules.  Plaintiff highlights his

10  earnings do not fall under the criteria of being self-sufficient under the rules, earning $1,270.50 in the

11  first year, $1,413.50 the second year, and $720 in the third year.  (AR 237.)[7]

12      Plaintiff argues he only was able to complete high school with the assistance of his

13  grandmother.  (Ex. 27F at 19, AR 1165.)  Plaintiff argues the Individualized Education Program

14  ("IEP") report states Plaintiff was falling behind in school, and therefore would not be graduating with

15  his class in May of 2019.  (Br. 2-3.)  Plaintiff proffers his grandmother did his class assignments and

16  tests he brought home so that he would graduate in May of 2019.  (Br. 3.)  Plaintiff notes he attended

17  a three month course as a custodian from February 2019 to June 2019 while in high school, with the

18  assistance of an adult friend of his mother, and obtained a custodian certificate.  (Br. 3.)[8]

---

20  rehabilitation and independent living programs in the country." https://www.dor.ca.gov/Home/DepartmentOverview (last accessed August 9, 2023).

21  [7]  These monetary amounts are reflected in the record, appearing to be wages earned in 2017, 2018, and 2019, from a program at Fresno Unified School District.  (AR 236-37.)

23  [8]  Plaintiff references a portion of a multidisciplinary psychoeducational report prepared by the Fresno Unified School District, noting testing dates of November 6, 26, and 27, 2018, and an IEP meeting date of December 3, 2018.  In the page cited by Plaintiff, it is noted that Plaintiff was 17 years old and in the 12th grade. (AR 1165.) The report does note that Plaintiff was "not currently on-track to graduate with his class in June 2019 (he is deficient credits and not passing all of his current classes)." (Id.)  It is noted, "State and district standardized testing suggests below grade level expectations in English language arts and mathematics."  (Id.)  It is noted Plaintiff started receiving special education services in 2008; that such services and eligibility changed across the years; and that the current services at that time came in the form of special day class instruction for all core classes, and he was "identified as a student with a Specific Learning Disability." (Id.)  The form also noted current testing then reflected average skills in processing sped, verbal long-term recall, visual-spatial long term recall, math fluency, adaptive skills of self-care, and adaptive skills of health and safety.  (AR 1166.)  Below average skills were reflected in auditory processing, oral language, orthographic processing, visual-spatial working memory, basic reading, math calculation, writing short sentence quickly, and practical daily adaptive skills.  (Id.)  Plaintiff also scored in the

Plaintiff's briefing notes he was seeing a school psychologist through "Community Valley Region Center," and "for some error of their own an alleged parent requested that his services be discontinued during his 9th grade [but] [u]nder State and United States Federal Laws a minor cannot make [a] reasonable decision of their own let alone sign any contract [thus Plaintiff] was unable to seek any therapist of his own [] and has been suffering with mental disability for some time [and] the evidence will support that fact." (Br. 3.)

Plaintiff avers that after graduating, he was later reinstated into Community Valley counseling. (Br. 3.) Plaintiff appears to argue that: "while under medical review all facts were not inputted nor were questions being asked for him to repeat what was being said to him and explain what was said," "[q]uestions should have been asked to the Plaintiff . . . what he just heard in order to know if his understanding is that being understood with someone of his disability," Plaintiff "does not actually comprehend everything that is being said to him, nor explain[ed] to him and therefor needs clarification by asking questions." (Br. 3.)

Plaintiff argues he has been dealing with an intellectual disability since birth, and was in fact in special education from preschool, kindergarten, and into the 1st through 12th grade. Plaintiff notes he was behind and would not be graduating, and so brought all assignments and tests home, and his grandmother completed them in order for Plaintiff to graduate in May of 2018. Plaintiff went to apply for services with the DOR in December of 2018, with an expected date of completion in June 2023, and is currently working with them as of the briefing date. (Br. 4.)

Plaintiff claims that while working with the DOR, the Defendant agency conducted a medical review that ended his disability, and Plaintiff then proceeds to recount the procedural history of this case. (Br. 4) Plaintiff notes that he was unable to work with the DOR when the COVID-19

---

lower extremely range on fine motor skills task, phonological processing, visual-spatial processing, verbal working memory, reading comprehension, math reasoning, written communication, listening comprehension, oral communication, and social adaptive skills. (Id.) Finally, it was noted Plaintiff was identified as qualifying for special education services in 2008; that he "presents with a very diverse learning pattern," "has several skills in the average range but many that are in the below average to deficient ranges," that it "appears that at processing deficit in the area of phonological processing is negatively impacting several academic areas," and "fine motor deficit is hampering his written expression development. (Id.) Where the form is asked whether Plaintiff has significantly subaverage intellectual functioning, existing concurrently with deficits in adaptive behavior, the form states no, Plaintiff's "learning profile is marked by strengths and weaknesses consistent with a Specific Learning Disability," and "presents with processing skills, academic skills, and adaptive skills that are diverse," and the "profile is consistent with a specific learning disability and not with an intellectual disability." (AR 1166-67.)

1   pandemic began, with government agencies impacted and closed during the period, and this caused

2   issues for Plaintiff in performing and gaining access and help from the DOR.  (Br. 5.)  Plaintiff states

3   the local Social Security office, despite being aware of the pandemic, still proceeded with a medical

4   evaluation, knowing the limited resources Plaintiff would have.

5       Plaintiff was seen by Dr. Swanson,[9] who Plaintiff argues did not have all the facts while

6   questioning the Plaintiff on the date of the evaluation.  Plaintiff argues that if Dr. Swanson had all the

7   facts, he would have preceded on to deeper questions and would have found Plaintiff was and is

8   severely disabled.  (Br. 5.)

9       Plaintiff states that on February 4, 2021,[10] the phone hearing was held, conducted at the

10   residence of Plaintiff's mother, "which from reading the report should ha[ve] been done at the place

11   in which the Plaintiff . . . resides at."  (Br. 5.)  When Plaintiff's grandmother asked him what

12   happened, Plaintiff told "his grandmother he wasn't sure of the questions being asked and he

13   couldn't think straight because it was loud and confusing."  (Br. 5.)  When the grandmother asked

14   Plaintiff why he didn't tell the judge that, Plaintiff answered he doesn't know.  Plaintiff argues this

15   shows that even under pressure and being questioned, everything must be clear to make sure that the

16   information Plaintiff is receiving is clear.  (Br. 5-6.)  Plaintiff asks if the ALJ had known all the facts,

17   would his ruling be the same or would the hearing have been continued?  (Br. 6.)

18       Plaintiff notes he resides at low income housing for individuals with disabilities.  (Br. 6.)

19   Plaintiff gets assistance from his mother arranging doctor's appointments, cleaning his apartment,

20   running errands, taking him grocery shopping, and helping manage his money.  Plaintiff's girlfriend

21   resides in another state and he has never met her.  Plaintiff again highlights he obtained his high

22   school diploma with the help of his grandmother and notes he has been suffering from an intellectual

---

[9]  This references the consultative exam conducted by Steven Swanson, Ph.D.  (See AR 1058-1063.)

[10] As noted above, the initial hearing with the ALJ was held on January 13, 2021, at which Plaintiff and his mother, Ms. Medina, presented testimony.  (AR 45-59.)  The hearing was postponed so that Plaintiff could try to obtain legal representation.  (AR 56-58.)  The ALJ concluded by asking "[d]o you understand that if you don't have a representative when your hearing is rescheduled, we're going to go forward that day?", and Plaintiff stated he understood.  (AR 58.)  A second hearing was held on April 28, 2021, at which Plaintiff, his mother, Ms. Medina, and a vocational expert ("VE"), presented testimony.  (AR 62-93.)  The efforts that the mother took to obtain legal representation were discussed again at the second hearing, and whether the Plaintiff wished to proceed.  (See AR 64-65.)

disability since birth, citing generally to various records.  Plaintiff notes there is a history and records from child protective services, the Tulare Police Department, Fresno Police Department, Fresno Family Court, and specifically avers to a child protection case and "the horror . . . Plaintiff suffered from the abuse of his step father . . . well known Bull Dog Gang Member and [ex-convict] from prison and [who] was the minor child's Payee by the Social Security Administration."  (Br. 6.)

Plaintiff highlights that he is currently seeing Dr. Asarulislam Syed who has diagnosed anxiety, psychosis, bipolar disorder, and PTSD, and that he is currently taking Aripiprazole and Mirtazapine.  Plaintiff saw a health care provider in November of 2022, and the physician filled out a verification of incapacity for general relief, and it was noted Plaintiff is in fact permanently disabled from development delay, and PTSD/anxiety.  Plaintiff states his handwriting is not that of a high school graduate.  (See AR 907.)

Plaintiff notes that his grandmother had spoken to the attorney for Defendant and requested they restate Plaintiff's disability, and counsel declined stating the DOR, Community Valley, and ARC of Fresno helps individuals with disabilities, but are not considered federal funded programs, and not considered under the Social Security Rules because they are state, county, and city agencies.  (Br. 7.)  Plaintiff also notes Defendant's counsel declined to answer the question of whether individuals with disabilities can still work and collect their disability.  Plaintiff's grandmother then stated to the Defendant's counsel that the grandmother would like to see him working and become self-sufficient, and Plaintiff alleges counsel stated back that because of what you just said, I am not going to reinstate his benefits.[11]

---

[11]  Counsel for Defendant has provided a declaration in response to this aspect of the briefing.  (Decl. Elizabeth Landgraf ("Landgraf Decl."), ECF No. 15-1.)  Counsel declares that in January 2023, she received multiple calls and voicemails from Plaintiff's grandmother, Selina Peterson; that during these phone calls, Ms. Peterson sought to discuss the merits of Plaintiff's case; that counsel informed her that she would review the administrative record and evaluate whether it appeared settlement options existed, and would discuss the merits of the case to the extent that settlement options (if any) did, in fact, exist.  (Landgraf Decl. ¶ 3.)  Counsel also declares that on January 19, 2023, she informed Ms. Peterson that after reviewing the administrative record, counsel believed the ALJ decision was free of reversible error, and therefore, counsel could not agree to settle the case at this stage.  (Landgraf Decl. ¶ 4.)  Counsel declares that Ms. Peterson continued to stress her opinion that Plaintiff was disabled; that the conversation escalated to the point where Ms. Peterson issued a series of threats, including that she would go to the press regarding Plaintiff's case; that at that point, counsel informed her that she believed the conversation was no longer productive; counsel directed her to this Court's Order (ECF No. 9), dated November 28, 2022, and informed her Plaintiff should submit his arguments in writing, in accordance with the Court's Order; and counsel told Ms. Peterson that she would respond to Plaintiff's brief in writing, as required by the Court's Order.  (Landgraf Decl. ¶ 4.)  Finally, counsel submits that in briefing, Plaintiff misrepresents counsel's statements; and that to the extent

Plaintiff requests the Court rule in his favor, and reinstate his disability while and until he completes his full program with the DOR, and that Defendant render back payments of all disability benefits previously denied, and for violating Social Security Act 1148, Section Ticket to Work and 519. (Br. 7.)

### B.   Preliminary Discussion of Defendant's Argument that Plaintiff presents No Clear Challenge to the ALJ's Findings, and Identifies no Specific Error Warranting Remand

Defendant argues that while Plaintiff generally disagrees with the ultimate conclusion that he is not disabled, he simply states in a conclusory manner that he has a number of psychological impairments; that at the administrative hearing, Plaintiff made no new allegations with respect to his allegedly disabling impairments; and as such, the ALJ already considered the arguments Plaintiff now makes alleging that he is disabled. Defendant argues that in support of his contention that he is disabled, Plaintiff fails to discuss any specific medical evidence contained in the certified administrative record. The Court largely agrees that Plaintiff does not specifically present arguments or discussion regarding the general citations in his opening brief, which the Court noted some portions of above. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The claimant bears the burden of proving that she is disabled." (quoting Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999))). The clearest challenges appear to relate on the finding of self-sufficiency as related to Plaintiff's activities, the manner the hearing was conducted, and the discussion of Dr. Swanson's consultative exam.

Insofar as Plaintiff broadly challenges the Commissioner's final decision that he is not disabled, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009). The Court largely agrees with Defendant that without having presented specific evidence to counter the ALJ's conclusion nor any concrete argument as to how the ALJ erred, Plaintiff's overall challenge to the ALJ's decision must fail. See id.; Carmickle v. Comm'r of Soc. Sec., 533 F.3d 1155, 1161 (9th Cir. 2008) ("We do

---

counsel made any statement resembling, as Plaintiff puts it, that counsel was "not going to restate [sic] his benefits," counsel instead, asserted that the determination of disability is within the purview of the Commissioner, and it is not a determination within her power or discretion; and otherwise denies the statements attributed to her in Plaintiff's brief. (Landgraf Decl. ¶ 5.) Ultimately, these interactions between counsel and Plaintiff's grandmother do not impact the Court's analysis, conclusions, and recommendations herein.

1  not address this finding because [claimant] failed to argue this issue with any specificity in his

2  briefing."); Independent Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003)

3  ("[W]e review only issues which are argued specifically and distinctly in a party's opening brief

4  [and] [s]ignificantly, a bare assertion of an issue does not preserve a claim." (internal quotation

5  marks and citations omitted)).

6       The Court notes these cases cited by Defendant are confined to appellate briefing, however,

7  the Court sees such arguments proffered by the Commissioner often, and such arguments appear to

8  be routinely accepted by district courts.  See Moore v. Comm'r of Soc. Sec., No. 2:16-CV-00875-

9  KJN, 2017 WL 3453200, at *4 (E.D. Cal. Aug. 11, 2017) ("[P]laintiff fails to argue this issue with

10  any specificity, beyond his conclusory assertion [and] [p]reliminarily, the court need not address

11  issues that are not fully briefed." (citing Carmickle, 533 F.3d at 1161)); Groom v. Berryhill, No.

12  EDCV 17-1117 JC, 2018 WL 1517165, at *6 (C.D. Cal. Mar. 27, 2018) ("Plaintiff's Motion again

13  provides no specific argument regarding how the ALJ specifically erred in such respect, and thus

14  fails to persuade the Court that a remand is warranted here."); Patricia Z. v. Comm'r of Soc. Sec., No.

15  2:18-CV-930 TLF, 2019 WL 1615235, at *5 (W.D. Wash. Apr. 16, 2019) (However, 'a bare

16  assertion of an issue does not preserve a claim[,]' [and] [a]lthough plaintiff recites evidence, she

17  offers no cogent reasons (apart from the argument discussed above) to explain why or how the

18  evidence justifies reversal of the ALJ's decision." (quoting  D.A.R.E. America v. Rolling Stone

19  Magazine, 270 F.3d 793, 793 (9th Cir. 2001))); Garcia v. Comm'r of Soc. Sec. Admin., No. CV-21-

20  00191-PHX-JJT, 2022 WL 14813733, at *3 (D. Ariz. Oct. 26, 2022) ("Plaintiff fails to argue with

21  any specificity as to which particular ailments Plaintiff believes the ALJ did not correctly consider

22  when discounting the symptom testimony.").

23       Defendant proffers this principle also applies in cases involving *pro se* litigation. See

24  Hernando v. Hamamoto, 627 F. App'x 627, 628 (9th Cir. 2015).  The Court notes this case is not a

25  social security decision and does not contain a discussion of the *pro se* status of the party, however,

26  the Ninth Circuit did apply the principle to such case where the litigant was proceeding *pro se*.  Id.

27  The Court addresses more specific caselaw concerning the ALJ's duty to *pro se* parties in relation to

28  this case, further below.

1    There is ample support for the argument that Plaintiff's briefing inadequately presented

2  specific challenges.  Nonetheless, construing the *pro se* party's briefing liberally, in sum, it appears

3  that Plaintiff takes issue with the ALJ's and agency's overall decision; argues that the hearing was

4  not conducted in a proper manner; that the decision was erroneously based on a finding of being self-

5  sufficient in activities; that the Plaintiff was unable to communicate his answers properly; and that

6  the consultative examiner did not ask proper questions.  The Court finds it most prudent to consider

7  the arguments as generally challenging the ALJ's manner of conducting the hearing, as well as the

8  overall decision, including the weighing of the subjective testimony and allegations, the ALJ's

9  weighing and reliance on the opinion from the consultative exam, and the ultimate RFC

10  determination.

11      **C.      Restatement of the ALJ's Opinion**

12      As the Defendant notes, the first step of the sequential evaluation was not applicable in this

13  case, as it is not used for redetermining disability at age 18.[12]  At step two, the ALJ determined that

14  Plaintiff had a severe impairment of borderline intellectual functioning.  (AR 20.)  In evaluating the

15  severity of a claimant's mental impairment, the ALJ rates the degree of the claimant's functional

16  limitation in four areas: understanding, remembering or applying information; interacting with

17  others; concentrating, persisting, or maintaining pace; and ability to adapt or manage oneself (the

18  psychiatric review technique ("PRT")).  20 C.F.R. § 416.920a(c)(3).  The ALJ found that Plaintiff

19  had no more than mild to moderate limitations in each of the functional areas.  (AR 21.)  At step

20  three, the ALJ concluded that Plaintiff's impairments did not meet or equal any of the disabling

21  impairments listed in the regulations.  (AR 20–22.)

22      The ALJ then considered Plaintiff's residual functional capacity ("RFC") and concluded that

23  Plaintiff was capable of performing work at all exertional levels but had the following non-exertional

24  limitations: he was limited to simple, repetitive tasks involving only routine work-related decisions;

25  he could have no more than occasional contact with co-workers; he could have no work-related

---

[12]  *See* 20 C.F.R. § 416.987(b) ("When we redetermine your eligibility, we will use the rules for adults (individuals age 18 or older) who file new applications explained in § 416.920(c) through (h).  We will not use the rule in § 416.920(b) for people who are doing substantial gainful activity, and we will not use the rules in § 416.994 for determining whether disability continues.").

contact with the general public; and he was unable to work at a production pace rate.  (AR 22.)  In assessing the RFC, the ALJ considered both Plaintiff's allegations of debilitating mental functioning and the third-party reports submitted by Plaintiff's mother and grandmother to be inconsistent with the record as a whole.  (AR 23–24.)  Specifically, the ALJ found allegations regarding Plaintiff's inability to care for himself inconsistent with evidence such as a consultative examiner's findings that Plaintiff's mental status was entirely intact, and Plaintiff was independent with his activities of daily living.  (AR 24, 1059, 1062.)  The ALJ also relied on the medical opinion and prior administrative medical findings of three doctors.  (AR 26–28, citing AR 102–04 [G. Ikawa, M.D.], 1084, 1087, 1091 [S. Khan, M.D.], 1058–63 [Steven Swanson, Ph.D.].

Accordingly, the ALJ determined that while Plaintiff had no past relevant work (step four), he was capable of performing other work existing in significant numbers in the national economy, including the representative jobs of garment folder, laundry laborer, and cleaner II.  (AR 29–30.)  As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 30.)

**D.    General Legal Standards**

Given the lack of precise legal challenge, the Court shall generally discuss the legal standards applicable to the RFC determination overall, the legal standards applicable to weighing subjective symptom testimony, and the legal standards for weighing medical opinions and administrative findings.  The Court will then analyze the ALJ's findings and decision generally in relation to all of the overlapping legal standards, and additionally consider any additional standards applicable to unrepresented claimants.

1.    <u>RFC Determination</u>

The RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.945(a); <u>see also</u> <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1085 (9th Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it represents the maximum amount of work the claimant is able to perform based on all the relevant evidence in the record.  <u>See</u> <u>id.</u>; <u>see also</u> 20 C.F.R. § 416.945(a)(3) (RFC determination must be

1   "based on all of the relevant medical and other evidence.").  As previously noted, the RFC is not

2   a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20

3   C.F.R. §§ 404.1527(d)(2); 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the

4   responsibility of the ALJ, not the claimant's physician, to determine residual functional

5   capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical

6   evidence, the ALJ is charged with determining credibility and resolving the conflict."  Benton v.

7   Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); Batson, 359 F.3d at 1195; see also Lingenfelter,

8   504 F.3d at 1042 ("When evaluating the medical opinions of treating and examining physicians,

9   the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in

10  the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r

11  of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for

12  resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti, 533

13  F.3d at 1041–42 ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the

14  medical evidence.").

15          In reviewing whether an ALJ committed error in determining the RFC, the relevant

16  inquiry is whether the medical evidence supports the ALJ's finding.  Stubbs-Danielson v. Astrue,

17  539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding the RFC assessment adequately captures

18  restrictions if it is consistent with the concrete limitations in the medical opinions); see also

19  Schneider v. Comm'r, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address

20  claimant's migraines was harmless because medical record did not support finding that migraines

21  would affect claimant's functioning at work).  Accordingly, "[t]he ALJ's RFC determination

22  need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v.

23  Comm'r of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22,

24  2019) (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also

25  Chavez v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact

26  descriptions of … limitations" to reach an RFC determination consistent with the medical record

27  and claimant's limitations).

28  / / /

2.      Weighing Subjective Testimony

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.").   Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.  In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

In addition to the medical evidence, factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014);

1  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter, 504 F.3d at 1040;

2  Smolen, 80 F.3d at 1284.   Thus, the ALJ must examine the record as a whole, including

3  objective medical evidence; the claimant's representations of the intensity, persistence and

4  limiting effects of her symptoms; statements and other information from medical providers and

5  other third parties; and any other relevant evidence included in the individual's administrative

6  record.  SSR 16-3p, at *5.

7        3.    <u>Weighing Medical Opinions and Prior Administrative Medical Findings</u>[13]

8        Where, as here, a claim is filed after March 27, 2017, the revised Social Security

9  Administration regulations apply to the ALJ's consideration of the medical evidence.   <u>See</u>

10  <u>Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions)</u>, 82 Fed. Reg.

11  5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated

12  regulations, the agency "will not defer or give any specific evidentiary weight, including

13  controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

14  including those from [the claimant's own] medical sources."   20 C.F.R. §§ 404.1520c(a);

15  416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical

16  sources when considering medical opinions, and no longer mandate particularized procedures

17  that the ALJ must follow in considering opinions from treating sources.   <u>See</u> 20 C.F.R. §

18  404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or

19  prior administrative medical finding from one medical source individually.");  <u>Trevizo v.</u>

20  <u>Berryhill</u>, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit,

21  this means the 2017 revised Social Security regulations abrogate prior precedents requiring an

22  ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where

23  uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons

---

24  [13]   Under the applicable regulations for evaluating medical evidence, State agency medical and psychological

25  consultants do not provide "medical opinions."   Rather, the new regulations use the term "prior administrative medical finding" to refer to findings "about a medical issue" made by the State agency medical and psychological

26  consultants who review a claimant's medical file at the initial and reconsideration levels of the administrative process.   <u>See</u> 20 C.F.R. § 416.913(a)(5).   ALJs, however, must consider this evidence under the same rules that

27  apply to "medical opinions" because these "consultants are highly qualified and experts in Social Security disability evaluation."  20 C.F.R. § 416.913a(b)(1); <u>see also</u> 20 C.F.R. § 416.913(a) (identifying "medical opinions" and "prior

28  administrative medical findings" as categories of evidence an ALJ must consider), (a)(2) (defining "medical opinions").

1  supported by substantial evidence in the record, " where contradictory evidence is present.

2  Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

3  Instead, "[w]hen a medical source provides one or more medical opinions or prior

4  administrative medical findings, [the ALJ] will consider those medical opinions or prior

5  administrative medical findings from that medical source together using" the following factors:

6  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5)

7  other factors that "tend to support or contradict a medical opinion or prior administrative medical

8  finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in

9  evaluating the persuasiveness of medical opinions and prior administrative medical findings are

10 supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability

11 factor, the regulation provides that the "more relevant the objective medical evidence and

12 supporting explanations presented by a medical source are to support his or her medical

13 opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).

14 Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence

15 from other medical sources and nonmedical sources in the claim, the more persuasive the

16 medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

17 Accordingly, the ALJ must explain in her decision how persuasive she finds a medical

18 opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §

19 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the

20 [other remaining factors]," except when deciding among differing yet equally persuasive

21 opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is

22 "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R.

23 § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must

24 determine whether the ALJ adequately explained how she considered the supportability and

25 consistency factors relative to medical opinions and whether the reasons were free from legal

26 error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS,

27 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

28 / / /

1          **E.      The Court Finds No Legal Error Warranting Remand**

2          Based on the Court's review of the record, the ALJ's opinion, the hearing testimony,

3   Plaintiff's arguments, and the appropriate legal standards, the Court concludes that substantial

4   evidence supports the finding that Plaintiff was capable of performing work with significant non-

5   exertional limitations, including that he was limited to simple, repetitive tasks involving no more

6   than routine work- related decisions, and he could have no work-related contact with the general

7   public.  (AR 22.)  The Court finds no legal error that would warrant the award of disability

8   benefits or remand for further proceedings, and specifically finds no error in the manner the ALJ

9   conducted the hearing, in the weighing of the medical evidence, medical opinions, nor in the

10  weighing of the subjective symptom testimony.

11         The ALJ reviewed the medical record and considered Plaintiff's allegations regarding his

12  symptoms and the extent of his limitations.  (AR 22–29.)  The ALJ addressed objective evidence

13  related to Plaintiff's impairments and found Plaintiff's complaints of disabling mental symptoms

14  were not consistent with normal mental status examination findings, the functional assessments

15  of three doctors that his impairments were not so severe as to preclude all work activity, and his

16  ability to independently perform many daily activities.  (Id.)

17         As for Plaintiff's allegations of debilitating mental symptoms, the ALJ acknowledged

18  that objective medical evidence, including treatment notes, medical diagnoses, and diagnostic

19  studies, established that Plaintiff had borderline intellectual functioning.  (AR 24.)  The ALJ

20  noted that Plaintiff had been in a special education program under a "specific learning disability"

21  and was placed on individualized education plans until he graduated from high school.  (AR 24–

22  25, 830–32, 900.)  The ALJ acknowledged that Plaintiff required reminders from time to time

23  about turning in his schoolwork, and that he at times struggled with understanding directions and

24  reading comprehension.  (AR 24-25, 815, 834, 1156.)  The ALJ noted Plaintiff tested in the

25  lower extreme to below average range for working memory and his ability to process

26  information, that his standardized tests placed him below grade level in several subjects, and that

27  he had IQ scores ranging from 66 to 79.  (AR 25-26, 1158–60, 1165.)

28         However, the ALJ considered on the other hand that Plaintiff's communication

1   development, gross motor, social emotional, and adaptive skills were noted within normal limits.

2   (AR 24, 815, 834.)  The ALJ considered that he got along well with his teachers and friends,

3   worked well in groups, could take care of his personal needs, and was able to navigate the school

4   campus on his own.  (AR 24–25, 610, 900.)  The ALJ considered that a March 2019 teacher

5   questionnaire indicated that while Plaintiff had slight and obvious problems in some areas, such

6   as in acquiring and using information, he had no problems interacting and relating to others;

7   moving about and manipulating objects in most situations; and caring for himself.  (AR 25, 417–

8   24.)

9       The ALJ also considered the consultative examination findings by Dr. Swanson who

10  noted Plaintiff had some mental impairment and diagnosed borderline intellectual functioning.

11  (AR 27–29, 1062.)  However, the ALJ discussed that the objective findings by Dr. Swanson also

12  indicated that Plaintiff's eye contact was within normal limits; his speech was unremarkable,

13  fully intelligible, and appeared to fall within normal limits; his form and content of thought were

14  within normal limits; there was no evidence of delusional material; short-term, recent, and

15  remote memories were within normal limits; concentration was adequate for performing simple

16  mathematical calculations; judgment and insight were deemed intact; general fund of knowledge

17  fell within normal limits; and Plaintiff maintained satisfactory attention and concentration

18  throughout the examination.  (AR 27, 1060.)

19      The Court agrees with Defendant that the ALJ reasonably determined the objective

20  evidence did not support the full extent of Plaintiff's alleged mental limitations, including that he

21  was unable to work due to his below average intellect, emotional problems, and behavioral

22  problems.  (AR 23, 378, 388; see also 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . .

23  . is a useful indicator to assist us in making reasonable conclusions about the intensity and

24  persistence of your symptoms . . . [h]owever, we will not reject your statements about the

25  intensity and persistence of your pain or other symptoms or about the effect your symptoms have

26  on your ability to work . . . solely because the available objective medical evidence does not

27

28

1  substantiate your statements.").[14]

2      The Court finds the ALJ reasonably identified inconsistencies and contradictions in the

3  record.  (See AR 24 "[T]hey are inconsistent because the alleged severity of mental impairment

4  reported in the Function Report of record contradicts the objective findings by the consultative

5  examiner who found the claimant's mental status entirely intact and that he was independent

6  with his activities of daily living . . . I also note the claimant's mother and grandmother stated he

7  was born with mild Down syndrome; however, a review of the records shows no diagnosis of

8  Down syndrome of any degree of severity.").)   Although Plaintiff alleged inability to

9  communicate with others, function properly, or care for certain personal needs, Dr. Swanson

10 noted that his speech was fully intelligible, and his speech, thought content, judgment, memory,

11 and general fund of knowledge all fell within normal limits.  (AR 27, 1060.)  These objective

12 findings were inconsistent with the allegedly disabling nature of Plaintiff's mental impairments.

13 See Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in

14 the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it

15 as undercutting such testimony") (emphasis in original); Jones v. Comm'r of Soc. Sec., No. 1:22-

16 CV-00769-SAB, 2023 WL 346824, at *10–11 (E.D. Cal. Jan. 20, 2023) (concluding that "the

17 Ninth Circuit has provided that contradiction between the claimant's testimony and the relevant

18

19 [14]  Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective
medical evidence."  See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated
20 by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also
C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or
21 other symptoms or about the effect your symptoms have on your ability to work solely because the available
objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony
22 is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting
the testimony.  See Burch, 400 F.3d at 680–81; Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017).

23 Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and
its disabling effects."   Burch, 400 F.3d at 680–81; Rollins, 261 F.3d at 857; SSR 16-3p (citing 20 C.F.R. §
24 404.1529(c)(2)).  Indeed, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical
evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to
25 meet the clear and convincing standard.  See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting
Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination
26 claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction
with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Woods v.
27 Comm'r of Soc. Sec. (Woods I), No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022)
("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony,
28 inconsistency with the medical evidence or medical opinions can be  sufficient." (emphasis in original)).

1  medical evidence is a sufficient basis" for discounting a claimant's subjective allegations)

2  (collecting cases).

3        The Court additionally finds the ALJ's reliance on the overall testimony and records

4  concerning daily activities and general level and abilities of Plaintiff to conduct various

5  activities, to be proper and satisfies the clear and convincing standard. See Smartt, 53 F.4th at

6  499 ("An ALJ may also consider whether the claimant engages in activities inconsistent with the

7  alleged symptoms."); 20 C.F.R. § 416.929(c)(3)(i) (adjudicator considers activities of daily

8  living in evaluating subjective allegation).[15]  As the ALJ discussed, despite his alleged difficulty

9  in performing certain activities and his need for some assistance from family, Plaintiff's

10  activities were not as limited as would be expected of a totally disabled person.  For example,

11  Plaintiff was able to take care of his personal hygiene and reported enjoying talking to his

12  girlfriend, listening to music, playing video games, using his phone, and traveling.  (AR 26–28,

13  1059.)  The ALJ noted that Plaintiff reported an ambition to attend a "custodian program" after

14  high school in order to become a custodian one day.  (AR 27, 1059.)  Plaintiff's mother reported

15  Plaintiff could use a microwave to prepare food and feed himself, dress and bathe without

16  assistance, go out alone, count change, go to the movies and the mall, and get along with others

17  sometimes.  (AR 23, 406–09.)  Plaintiff's grandmother reported that Plaintiff is able to shop for

18  junk food on his own at convenience stores, could walk and use public transportation, and got

19  along with people but liked to be alone.  (AR 24, 397, 399.)

20        In this regard, the Court also finds that the ALJ properly weighed the prior administrative

21

22  [15] Ninth Circuit caselaw demonstrates that activities of daily living may be grounds for discounting allegations that an impairment is so severe it is totally debilitating, even if such activities are not directly transferrable to a work setting.  See Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (noting "the ALJ may discredit a claimant's

23  testimony when the claimant reports participation in everyday activities indicating capacities that are transferrable to a work setting … [and] [e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.")

24  (internal citations omitted); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (affirming the ALJ's decision where the claimant's allegations were inconsistent with activities of personal care, shopping, chores, riding public

25  transportation, and driving); Burch, 400 F.3d at 680 (finding the ALJ properly discounted the claimant's allegations where the claimant's activities suggest higher functionality, including caring for personal needs, cooking, cleaning,

26  shopping, and interacting with family).  As the Ninth Circuit has explained, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they

27  contradict claims of a totally debilitating impairment."  Molina, 674 F.3d at 1113; Valentine, 574 F.3d at 694 (while daily activities "did not suggest [Plaintiff] could return to his old job [they] did suggest that [Plaintiff's] later claims

28  about the severity of his limitations were exaggerated").

medical findings of two other doctors in assessing Plaintiff's RFC, in accordance with the regulations. (AR 26–28.) Significantly, all three doctors found that Plaintiff's impairments were not so severe as to preclude him from all work. Specifically, in addition to Dr. Swanson's opinion, the ALJ considered the prior administrative medical findings of Drs. Ikawa and Khan. (AR 26–27.) Dr. Ikawa acknowledged that Plaintiff had a long history of special education classes to accommodate his intellectual impairment and noted his full scale IQ scores of 66 and 68; but also noted, however, that Plaintiff had no limitations with his activities of daily living; that Plaintiff's school psychologist noted Plaintiff was good at cleaning and organizing, and was able to take care of his personal hygiene while at school; and noted that in a third-party function report, Plaintiff's mother reported that he could prepare simple meals and use public transportation. (AR 26, 99.) Dr. Ikawa concluded Plaintiff could perform unskilled work with limited public contact. (AR 26, 102–04.) On reconsideration, Dr. Khan reviewed the record evidence and affirmed Dr. Ikawa's conclusions that Plaintiff was capable of performing simple, repetitive tasks with limited public contact. (AR 26, 1084, 1087, 1091.)

The ALJ concluded the findings of Drs. Ikawa and Khan were persuasive as supported by their review and citations to record evidence and consistent with the record as a whole, including Plaintiff's reported activities, third-party reports, and objective diagnostic studies. See 20 C.F.R. §§ 416.920c(c)(1)–(2). The ALJ found these doctors' findings persuasive in assessing that Plaintiff could perform simple, repetitive work. (AR 26.) However, the ALJ ultimately concluded that the record supported additional limitations not assessed by Drs. Ikawa and Khan, specifically that Plaintiff should have only occasional contact with co-workers and no work-related contact whatsoever with the general public. (AR 27 ("[T]he Function Reports also support limited social interaction and, overall, this appears to be a fair limitation, especially at it relates to public contact as the claimant is able to maintain social relationships, but does not easily interact with the general public."). The ALJ also assessed that Plaintiff could not work at a production rate pace. Thus, the ALJ made an RFC finding that is more restrictive than the one assessed by Drs. Ikawa and Khan. See Johnson v. Shalala, 60 F.3d 1428, 1436 n. 9 (9th Cir. 1995) (concluding that the "overinclusion of debilitating factors is harmless").

The ALJ found Plaintiff could perform all exertional work, but he had significant mental limitations, and the ALJ limited Plaintiff to simple, repetitive work requiring only routine work-related decisions and further assessed social and production pace limitations.  (AR 22.)  For example, because of Plaintiff's alleged difficulties communicating with others and interacting with the general public, the ALJ precluded him from all work-related public contact.  This is more restrictive than Dr. Swanson's CE, and indeed the ALJ found Dr. Swanson's  "opinion is not entirely consistent with the claimant's social functioning as it was based on a one-on-one interaction and does not reflect the claimant's capacity for dealing with the public."  (AR 28.)  The Court finds the ALJ reasonably concluded that Dr. Swanson's opinion was generally persuasive, given that it was supported by his objective clinical findings and personal examination as well as consistent with other evidence in the record, and fount it less persuasive in other aspects.  See C.F.R. § 416.920c(c)(1)–(2).

Overall, the Court finds these doctors' findings, and the ALJ's weighing of such and finding greater limitations in the RFC, supports the ALJ's determination that Plaintiff's functional abilities were greater than he alleged and were not disabling.  The Court concludes the ALJ properly weighed, considered, and applied the doctors' assessments.  See Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant).  The ALJ properly evaluated each of the above medical assessments and made specific findings regarding the factors of consistency and supportability, in accordance with the regulations.  See 20 C.F.R. § 416.920c; Woods, 32 F.4th at 787.

Based on the Court's review and the applicable legal standards, the Court finds the ALJ's overall RFC determination, weighing of the medical opinions and administrative findings, and weighing of the subjective testimony, to be free from legal error.  The Court now turns to consider Plaintiff's arguments in relation to the heightened standards applicable to unrepresented claimants.

1.   Plaintiff's Challenges to the Consultative Exam, Hearing, and Court's Consideration of the Issue of Representation

The Court considers Plaintiff's argument that Dr. Swanson "didn't even have all the facts" while examining Plaintiff, and "if he would have he probably" would have gone "deeper" to find Plaintiff was "severely disable[d]."  Defendant argues Plaintiff in no way clarifies which "facts" Dr. Swanson did not consider, and mainly repeats allegations such as that he requires assistance in performing certain activities, such as arranging doctor's appointments and managing certain chores.  However, as Defendant notes, Dr. Swanson acknowledged that Plaintiff lived with his mother and grandmother (AR 1059), and the ALJ discussed multiple times throughout the decision the allegation that Plaintiff required some assistance from family in performing certain activities.  (AR 23–24, 26, 28.)  For example, in assessing Plaintiff's overall RFC, the ALJ specifically took into account that Plaintiff's "family supports him with regard to household chores and shopping," and he "may need some reminders for tasks."  (AR 28.)  However, as the ALJ highlighted, Plaintiff testified he was capable of managing his chores and shopping himself, he was able to get around by himself and use public transportation, he could prepare simple meals for himself, and he was able to tend to his personal needs, entertainment, feeding, dressing, bathing, and independently obtain items he desired.  (AR 28, 83–85.)  The ALJ, therefore, considered the same alleged limitations Plaintiff emphasizes but reasonably concluded that, on balance, other evidence in the record undermined the alleged severity of such limitations.  The Court agrees with Defendant that Plaintiff's attempt to re-cast the evidence in his favor is not enough to overcome the deferential standard applicable here.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) ("If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." (internal quotation marks omitted)).

While Plaintiff argues Dr. Swanson should have asked "deeper" questions, essentially to prove disability, Defendant again emphasizes that the burden of proving disability falls upon Plaintiff, and the regulations do not require a consultative examiner or the ALJ to "continue developing the record until disability is established." Cajigal v. Berryhill, Civ. No. 17-00478-

1  ACK-RLP, 2018 WL 3000543, at *3–4 (D. Haw. June 15, 2018).

2       The Court turns to discuss the standards applicable to developing the record where a

3  claimant is unrepresented.  It is correct that when applying for disability benefits, the claimant

4  has the duty to prove that she is disabled.  42 U.S.C. § 423(c)(5)(A).  However, the ALJ has an

5  independent "duty to fully and fairly develop the record and to assure that the claimant's

6  interests are considered."  Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting

7  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  The ALJ has a duty to further develop the

8  record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow

9  for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir.

10  2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  A specific finding of

11  ambiguity or inadequacy in the record is not required to trigger the necessity to further develop

12  the record where the record itself establishes the ambiguity or inadequacy.  McLeod v. Astrue,

13  640 F.3d 881, 885 (9th Cir. 2011).

14       If "the claimant is unrepresented, however, the ALJ must be especially diligent in

15  exploring for all the relevant facts."  Tonapetyan, 242 F.3d at 1150.  Even considering the

16  unrepresented status of Plaintiff, the Court finds no indication that the ALJ improperly relied on

17  the consultative examiner opinion, and as discussed above, properly weighed the opinion and

18  assigned greater restrictions than Dr. Swanson opined.  The ALJ was not required to adopt the

19  findings or opinion of any of the physicians but rather was required to determine the RFC based

20  on all of the evidence in the record.  See 20 C.F.R. § 404.1527(d)(2) ("Although we consider

21  opinions from medical sources on issues such as . . . your residual functional capacity . . . the

22  final responsibility for deciding these issues is reserved to the Commissioner."); Rounds v.

23  Comm'r of Soc. Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("the ALJ is responsible for translating

24  and incorporating clinical findings into a succinct RFC"); Vertigan v. Halter, 260 F.3d 1044,

25  1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's

26  physician, to determine residual functional capacity.").  Significantly, the regulations provide the

27  following guidance for utilizing evidence in assessing an RFC, and allows for ordering a

28  / / /

consultative exam "if necessary":

> (3) Evidence we use to assess your residual functional capacity. We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.   (See § 404.1512(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.

20 C.F.R. § 404.1545(a)(3).  Here, a consultative exam was completed, and Plaintiff has not demonstrated it was so insufficient that it was necessary for the ALJ to arrange for another consultative exam.

The Court turns to consider Plaintiff's arguments relating to his alleged inability to understand questions asked during the administrative hearing.  In particular, Plaintiff states "[q]uestions should have been asked" to "explain what [Plaintiff] just heard in order to know" that he understood the questions.  (Br. 3.)  He further claims he did "not actually comprehend everything that [was] being said to him," and he needed clarification regarding the questions presented during the administrative hearing.  (Id.)  Based on the Court's review of the hearing transcripts, the Court concludes Plaintiff's assertions are not supported by the hearing transcripts, and the Court agrees with Defendant that Plaintiff fails to demonstrate any error on the part of the ALJ.  Based on the Court's review of the transcript, the ALJ carefully explained the questions so that Plaintiff could understand them, and it appears Plaintiff testified competently to all questions asked.  Overall, Plaintiff was either able to advocate for himself or had questions adequately clarified by his mother, who attended and represented him at the hearing.[16]

---

[16]  For example, the ALJ explained the purpose of the hearing and that it was part of a cessation review.  (AR 73.) The ALJ then asked if Plaintiff had any questions about the purpose of the hearing, to which Plaintiff responded "[n]o." (AR 73–74.)  The ALJ then confirmed that Plaintiff's mother also understood, to which she responded, "Yes. I do. . . . I understand exactly what you're saying. . . . I feel, honestly, that he [Plaintiff] understands you, but he don't understand or comprehend exactly everything.  And I just wish you would like try to explain it to him like kind of simply." (AR 74.)  The ALJ then confirmed that Plaintiff understood he is now an adult. (AR 74.)  The ALJ proceeded to explain that once a claimant, like Plaintiff, becomes an adult, the agency determines whether they are disabled (i.e. whether or not they can work) as an adult.  (AR 74.)  Plaintiff testified the ALJ's explanation made sense. (AR 74.)  The ALJ further explained his role to determine whether Plaintiff had a condition that limited his ability to work in the national economy, and the extent of that limitation.  (AR 74–75.)  Plaintiff stated he [footnote continued on following page]

1    Defendant argues that even assuming arguendo that Plaintiff did not understand every

2   question at the administrative hearing, Plaintiff has failed to show how any apparent lack of

3   understanding prejudiced him in any way because Plaintiff bears the burden of proving how any

4   alleged error prejudiced or harmed the claimant.  See McLeod v. Astrue, 640 F.3d 881, 887 (9th

5   Cir. 2011) (citing Shinseki, 556 U.S. 396); Hall v. Sec'y of Health, Educ., & Welfare, 602 F.2d

6   1372, 1378 (9th Cir. 1979) ("The claimant mut demonstrate prejudice or unfairness in the

7   administrative proceedings to be entitled to relief by way of remand.") (internal citations

8   omitted).  Defendant argues Plaintiff has not demonstrated how his alleged lack of understanding

9   of some questions at the hearing prejudiced him or how the ALJ failed to assist him in the

10   developing the record or otherwise.   Specifically, Plaintiff offers no allegation that the ALJ

11   should have done something else—e.g., obtain a medical expert to testify, order a consultative

12   examination, develop the medical record, or examine the vocational expert further.  See Key v.

13   Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (plaintiff must demonstrate prejudice or unfairness

14   in the administrative proceedings in challenging the validity of a hearing).

15    As for being unrepresented, Defendant only cites to one case in this section of briefing

16   pertaining to the hearing, arguing the ALJ acted properly in asking questions and carefully

17   inquired into Plaintiff's capabilities, which satisfied the ALJ's obligation to Plaintiff as an

18   unrepresented claimant.  See Duns v. Heckler, 586 F. Supp. 359, 364 (N.D. Cal. 1984) (where

19   ALJ did not investigate the unrepresented claimant's abilities to perform basic work activities,

20   remand was warranted).  As relevant to the fact the initial hearing that was continued to see if

21   Plaintiff could acquire counsel, and the second hearing's discussion of counsel, in Duns, the

22   court noted that "[i]t is a close question in this case as to whether claimant voluntarily waived

23   her right to counsel [as] [e]xamination of the colloquy between claimant and the ALJ [] indicates

24   that claimant was expressing an inability to obtain counsel rather than a desire to proceed

25   without one."  Duns, 586 F. Supp. at 364.

26   understood the ALJ's role and overall inquiry, and his mother raised no further objection claiming that Plaintiff did
     not understand.  (AR 74–85.)  The ALJ proceeded to question Plaintiff regarding his capabilities.  (AR 78–79.)  For
27   example, the ALJ questioned whether Plaintiff was able to keep his prior work schedule and manage his personal
     self-care.  (AR 78–82.)  Plaintiff's answers appeared coherent and directed to the specific questions asked,
28   particularly as to his activities and ability to function.  (AR 77-84.)

First, the Court notes that the Ninth Circuit has more recently discussed, and declined to adopt higher requirements for providing notice regarding the ability to have representation at the hearing.  Indeed, it appears what the ALJ did here at the two hearings, would satisfy the higher standard that is not required:

> The Commissioner  . . .  is required by statute to "notify each claimant in writing ... of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner...." This notification must "also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge." 42 U.S.C. § 406(c); *see also* 20 C.F.R. § 404.1706. Roberts does not contend that this statutory requirement was not met here, nor would he have any basis for doing so. The Notice of Disapproved Claim that he received after the initial denial of his claim and the Notice of Reconsideration that he received after denial on reconsideration both state that "you can have a friend, lawyer or someone else" help with the appeal and that "[t]here are groups that can ... give you free legal services if you qualify." These notices also mention the possibility of hiring an attorney on a contingency basis and refer claimants to their local Social Security office for a list of groups that can help with the appeal.
>
> Instead, Roberts contends that the ALJ was required to give him additional information on the value of having an attorney, and his options for securing one. He relies on two sources for this argument . . .
>
> . . . The enhanced disclosure requirements set forth in *Thompson* have never been adopted by this court. The Second Circuit recently elected *not* to adopt such requirements. *See Lamay v. Comm'r of Soc. Sec.,* 562 F.3d 503, 508 (2d Cir.2009). That court noted that the major appellate cases adopting enhanced disclosure requirements all predate the 1991 effective date of the current version of § 406(c), which mandates a more limited written disclosure to accompany the notice of an adverse decision. It concluded that the requirements of § 406(c) "supplanted prior judicially-created standards," and thus that "the statutory requirements are all that we can apply." *Id.* The court also noted that social security hearings are not meant to be adversarial in nature and that the ALJ's duty to explore for relevant facts is heightened in cases involving *pro se* claimants; therefore, "the limited, yet clear, requirements for notification enacted by Congress seem both sensible and likely adequate." *Id.* at 508–09.

Roberts v. Comm'r of the Soc. Sec. Admin., 644 F.3d 931, 933–34 (9th Cir. 2011).  Here, the Court notes this described written advisement was provided multiple times.  (AR 131 ("You can have a friend, lawyer or someone else help you.  There are groups that can help you find a lawyer or give you free legal services if you qualify.  There are also lawyers who do not charge

1   unless you win your appeal.   local Social Security office has a list of groups that can help you

2   with your hearing."); AR 144 (same); AR 116 (similar notice).)   A similar notice was also

3   provided in a colorful multi-page document entitled "Your Right To Representation," (AR 165-

4   167), and a list of legal assistance organizations for people that "cannot pay for legal

5   representation," was provided (AR 168).  This is in addition to the ALJ discussing the ways of

6   obtaining legal assistance at both hearings.  (See AR 54, 65.)

7        More importantly, as the Duns court noted, "whether or not there was a knowing and

8   intelligent waiver, the real issue is whether, in the absence of counsel, the ALJ met his

9   heightened duty to 'conscientiously and scrupulously probe into, inquire of, and explore all the

10   relevant facts' at the hearing so as to protect the claimant's interest."  Duns, 586 F. Supp. at 364

11   (quoting Vidal v. Harris, 637 F.2d 710, 713 (9th Cir.1981)).  This same principle was stated in

12   Roberts.  644 F.3d at 934 (noting "social security hearings are not meant to be adversarial in

13   nature and that the ALJ's duty to explore for relevant facts is heightened in cases involving *pro*

14   *se* claimants," as one reason why heightened notice regarding representation is not required); see

15   also Bernice H. v. Berryhill, No. 3:17-CV-00957-HZ, 2018 WL 3862303, at *3 (D. Or. Aug. 14,

16   2018) ("The ALJ's independent duty to fully and fairly develop the record is heightened when a

17   claimant proceeds *pro se.*" (citations omitted)).  "Under this heightened duty, the ALJ must

18   'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' to

19   protect the plaintiff's interests."  Id. (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir.

20   1978)).

21        "Where an ALJ fails to meet this duty and the plaintiff can demonstrate prejudice or

22   unfairness in the administrative proceeding because counsel was not present, remand is

23   warranted."  2018 WL 3862303, at *3 (citation omitted).  To demonstrate prejudice, the plaintiff

24   must point to specific facts, arguments, or evidence an attorney would have developed that could

25   have changed the outcome of the proceedings.  Id.  Thus, "[i]f [the] claimant can demonstrate

26   prejudice or unfairness as a result of the ALJ's failure to fully and fairly develop the record the

27   decision may be set aside."  Duns, 586 F. Supp. at 364.  In Duns, the court concluded "that the

28   ALJ did not meet his heightened duty and that claimant was prejudiced by lack of counsel at the

1  hearing [as] [t]he ALJ failed to investigate the extent of claimant's limitations on her ability to

2  do basic work activities, particularly her capacity to sit, lift, squat or bend." Id.

3      Here, based on review of the hearing transcripts, and the ALJ's opinion as a whole in

4  relation to the entirety of the record, the Court finds there is no indication the ALJ failed to meet

5  the heightened duty applicable to unrepresented parties.  The Court finds no indication the record

6  was not adequate for a determination, and the ALJ repeatedly confirmed whether the relevant

7  records were provided, noted certain records would be requested, and further left the record open

8  for supplementing the record.  C.f. Bernice H., WL 3862303, at *4 ("But the ALJ never provided

9  her with the opportunity to supplement the record [and] [g]iven the inadequacy of the medical

10  records for the relevant period and the indications throughout the record that it was incomplete,

11  the ALJ's heightened duty to develop the record was triggered [and thus] [b]y failing to take any

12  affirmative steps to develop the record, including leaving the record open at the close of the

13  hearing for Plaintiff to supplement her records, the ALJ failed to fulfill this duty.").

14      The Court finds no error.  See Burris-Hall v. Astrue, No. CV. 09-6354-MA, 2011 WL

15  653896, at *4 (D. Or. Feb. 14, 2011) ("Plaintiff correctly contends that an ALJ has a heightened

16  duty to ensure that the record is fully and fairly developed when the claimant is *pro se*[,] . . .

17  [h]owever, plaintiff's conclusory allegation that the ALJ failed to meet 'his multiple duties' is

18  insufficient to establish that the ALJ should have developed the record.").

19      2.    The Court Finds the Decision Supported by Substantial Evidence and Free From
20            Legal Error Warranting Reversal or Remand

21      In sum, having found no error concerning the unrepresented status of the Plaintiff in

22  relation to the hearing and need to develop the record, the Court finds the ALJ's conclusion that

23  Plaintiff could perform work with certain mental limitations was supported by the medical

24  evidence of record, the medical opinion and prior administrative medical findings, Plaintiff's

25  reported activities, and the vocational expert evidence that Plaintiff could perform work existing

26  in the national economy.  The ALJ fairly considered the medical evidence, noting evidence that

27  both supported that Plaintiff had significant mental limitations, as well as evidence that

28  contradicted his allegations that he was totally disabled due to his impairments.

In a substantial evidence review, "a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." Biestek, 139 S.Ct. at 1154.  "Even assuming without deciding that the medical evidence could support conflicting inferences, the court must defer to the Commissioner where the evidence is susceptible to more than one rational interpretation."  Quinones v. Astrue, No. CV 08-7225 AGR, 2009 WL 3122880, at *3 (C.D. Cal. Sept. 25, 2009) (citing Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)); see also Andrews, 53 F.3d at 1039 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.").  So long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaints, the Court will not engage in "second-guessing."  Thomas, 278 F.3d at 959; see also Davis v. Berryhill, 736 Fed. App'x 662, 665 (9th Cir. 2018) ("Though [the claimant] may disagree with the ALJ's interpretation of the record, the latter's interpretation is supported by substantial evidence, which precludes the Court from engaging in second-guessing.").  Thus, while Plaintiff may seek to suggest an alternative interpretation of this evidence, such is not sufficient to establish reversible error.  See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

The Court finds the ALJ provided sufficient clear and convincing reasons for discounting the subjective symptom testimony, reasonably and properly weighed the medical opinions and administrative findings, and issued a proper RFC determination supported by substantial evidence, and free from error warranting remand.  See Bayliss, 427 F.3d at 1214 n.1 (" If the record would support more than one rational interpretation, we defer to the ALJ' s decision" ); Burch, 400 F.3d at 679 (same); Smartt, 53 F.4th at 494 (same); Batson, 359 F.3d at 1193 ("the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record").

/ / /

/ / /

/ / /

/ / /

**V.**

**RECOMMENDATION**

Based on the parties' arguments, the record as a whole, the ALJ's opinion, and the applicable law, the Court finds no legal error.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.     Plaintiff's motion for summary judgment be DENIED;

2.     Defendant's cross-motion for summary judgment be GRANTED;

3.     Plaintiff's appeal from the decision of the Commissioner of Social Security be DENIED; and

4.     Judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Roman Perez Nunez.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **twenty-one (21) days** of issuance of this recommendation, any party may file written objections to the findings and recommendations with the Court.[17]  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 16, 2023**

_____
UNITED STATES MAGISTRATE JUDGE

---

[17]   The Court generally only provides fourteen (14) days for the filing of objections, however, given Plaintiff is proceeding *pro se*, the Court shall provide twenty-one (21) days.  If Plaintiff requires more time, he may submit a request for an extension of time.